(C. D. 222)

MICHAELIAN & KOHLBERG, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided October 9, 1939)

*Lane & Wallace* (*Samuel Isenschmid* of counsel) for the plaintiff.
*Webster J. Oliver*, Assistant Attorney General (*Joseph F. Donohue*, special attorney), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges

EVANS, Judge: This is an action against the United States in which the plaintiff seeks to recover money claimed to have been illegally exacted upon an importation of merchandise from China, entered at the port of New York. The protests enumerated in the schedule attached hereto were consolidated for trial with protest 853019–G. The trial consisted of submitting the cause on the following stipulation:

It is stipulated and agreed between counsel in the matter of the above protests, subject to the approval of the court, as follows:

1. That the respective rates of exchange appearing in typewriting on the respective entries were the rates of exchange at which the importer converted the foreign currency of the invoices into United States dollars in making entry, and that

said rates of exchange were the only rates of exchange upon the entries at the time of their original liquidation by the collector.

2. That, while the merchandise, rugs, was assessed with duty at the specific rate of 50 cents per square foot, it was necessary for the collector on liquidation to ascertain whether or not that rate was higher than 45% ad valorem under the terms of paragraph 1116, tariff act of 1930, under which they were classified.

3. That at the time of the original liquidation of said respective entries the collector did not note on said entries any change in the rates of exchange appearing in typewriting on said entries.

4. That, when the collector converts the foreign currency of an invoice into United States dollars and does not use the rate of exchange which an importer used for that purpose on his entry, it is the practice of the collector's office to strike out such exchange rate which appears on the entry, and to note on the entry, usually in red ink, the rate of exchange which the collector actually used in converting the foreign currency into United States dollars, said conversion of currency being a part of the official record in the liquidation of each entry.

5. That the rates of exchange appearing upon said entries in green lead pencil handwriting were subsequently placed upon them at the time of and in connection with the reliquidation of said entries pursuant to a decision of the United States Customs Court, promulgated April 16, 1936 (Abstract 33871), holding said rugs to be dutiable at 90% ad valorem under paragraph 1529 (a) of said act.

6. That the notations and rates of exchange appearing in black ink handwriting on the respective entries were placed there at the time of and in connection with the filing of the present currency protests above named.

7. That the legend "Liquidated as entered" rubber-stamped on said entries signifies that the respective entries were liquidated by the collector as entered by the importer, without change in rate or value.

8. That in the liquidation of said entries under said court decision the collector used said rates of exchange appearing on the respective entries in green lead pencil handwriting in converting the foreign currency of the invoices into United States dollars, which rates were the correct rates of exchange applicable to the foreign currency of the invoices on the respective dates of exportation of the merchandise in question, and which rates the collector obtained and noted on the respective entries at the time of their reliquidation, under said court decision, for the purposes of such reliquidations.

9. That all of the reliquidations of said entries were made more than sixty days after their original liquidations, and also more than sixty days after said decision of the court.

10. That the protests may be deemed to be submitted for decision upon this stipulation, and that the plaintiff may have one month after submission to file a brief, and the defendant may have one month thereafter to file its brief.

The right to amend the protests is hereby waived.

The importer's brief makes a clear and fair statement of the issue presented, which we copy herewith:

These protests claim that the collector, in reliquidating the entries pursuant to a decision of this court, erroneously and illegally converted the value of the foreign currency of the respective invoices into United States dollars at other and higher rates of exchange than the rates which were used upon entry, and which were adopted and approved by him in the original liquidation of the entries; that his action in so adopting and approving said exchange rates in the original liquidations precluded him from subsequently using any other exchange rates,

in the absence of protests contesting the legality of the conversion of the currency; and that the entries should be re-reliquidated and the foreign currency of the respective invoices converted into United States dollars at the exchange rates used upon entry, and presumptively in the original liquidation of the entries.

Each protest sets forth the exchange rate used upon entry, and also the rate used by the collector on the reliquidation of the respective entries covered by the protests.

The imported merchandise consisted of hand-made woolen rugs which were assessed for duty at "50 cents per square foot but not less than 45 per centum ad valorem," under the provisions of paragraph 1116 of the Tariff Act of 1930. The plaintiff protested this classification and established in another suit to the satisfaction of the United States Customs Court that the merchandise was dutiable at 90 per centum ad valorem under paragraph 1529 (a) of the same act. The judgment order of this court ordered a reliquidation in conformity with that decision.

An inspection of each of the entry papers in the instant case which were the same as those involved in the earlier case, discloses that in each instance the consular invoice gives the price per unit and the total invoice price in Yuan dollars; that the importer on entry assumed to convert the total sum of Yuan dollars into United States money and filled out the blanks in the consumption entry to show the quantity, the value in United States dollars, the rate in United States dollars, and the duty in United States dollars. He also stated, below the foregoing information, the Yuan dollar value, the rate of exchange, and the equivalent in United States money, according to his assumed rate of exchange.

The stipulation recites in paragraph 8:

That in the reliquidation of said entries under said court decision the collector used said rates of exchange appearing on the respective entries in green lead pencil handwriting in converting the foreign currency of the invoices into United States dollars, which rates were the correct rates of exchange applicable to the foreign currency of the invoices on the respective dates of exportation of the merchandise in question, and which rates the collector obtained and noted on the respective entries at the time of their reliquidation, under said court decision, for the purposes, of such reliquidations.

We had a similar question before us, raised by the same party litigant and decided in T. D. 49375, wherein the same attorneys appeared for the importer. In that case the theory advanced was that the collector had adopted the rate of exchange noted on the consumption entry. We there stated:

It should be pointed out that we are not concerned in this proceeding with what took place on entry in respect to the conversion of currency. A glance was sufficient to show a trained clerk or a liquidator that a duty of $1,458.30 upon a value of $1,347 was not less than 45 per centum ad valorem, the minimum rate provided in paragraph 1116 (a), *supra*. However, the allegation here is that upon his reliq-

uidation the collector used another rate of exchange than that which he used upon liquidation, and that his action was illegal and void because no protest had been filed involving currency conversion and he was foreclosed from adopting any other rate than the one used by him in his original liquidation.

This may be a correct theory but there are no facts presented to justify its application. There is not one iota of proof that the collector used in his liquidation the rate of $0.269375. The more natural and probable hypothesis—and it is supported by the usual presumption of correctness that attaches to the official acts of public officers—is that if he used any rate of exchange to determine which of the alternative rates of duty applied, it was the rate in effect on August 3, 1933, the date of exportation, that is $0.283125 (T. D. 46567). We are bound to assume that the collector knew the law, section 522 (c) of the Tariff Act of 1930, and that he obeyed it.

We pointed out in the above case that there was no proof that the collector used in his liquidation the rate of exchange used in the invoice. With reference to the stipulation of facts here presented it would appear that this objection obtains in the instant case. The stipulation in paragraph 4 assumes to state what the practice of the collector's office is with reference to conversion of currency, but it falls far short of stating that the collector ever liquidated any of these entries upon the basis of the currency conversion rate stated thereon. An inspection of the figures in the entries here involved discloses a like situation to that in the decided case.

Article 820 (a) of the Customs Regulations of 1931, in effect at the time these entries were made, defines liquidation as follows:

Liquidation of entries is the final computation or ascertainment of the duties accruing thereon.

In the liquidation the collector did not use any conversion rate in his determination of the amount of duties which the importer should pay. He was required under paragraph 1116 (a), supra, to make certain comparisons. That provision reads as follows:

PAR. 1116 (a) Oriental, Axminster, Savonnerie, Aubusson, and other carpets, rugs, and mats, not made on a power-driven loom, plain or figured; whether woven as separate carpets, rugs, or mats, or in rolls of any width, 50 cents per square foot, but not less than 45 per centum ad valorem.

Upon presentation of the entry at the customhouse it was necessary for some one to determine which rate should apply. If we assume the entry clerk accepted the figures stated by the importer as the correct conversion rate, it does not follow that the collector made the same mistake. As we said in the earlier case:

We are bound to assume that the collector knew the law, section 522 (c) of the Tariff Act of 1930, and that he obeyed it.

Section 505 of the tariff act provides, among other things, that the "collector shall ascertain, fix, and liquidate the rate and amount of duties to be paid," etc. Here are three coordinate things required to be done by that official. We take it that the ascertaining and fixing

of the rate must precede the liquidation. Ascertaining and fixing the rate in this instance required a comparison of what an ad valorem rate and a specific rate would amount to under paragraph 1116 of the Tariff Act of 1930, as well as the selection of the correct rate to apply. When and after that had been accomplished the liquidation took place and it involved no conversion of the currency. In this instance it simply made the application of the rate against the amount of merchandise involved.

Furthermore, we are not in accord with the theory of the importer on the collector's right to reliquidate at a different conversion rate. We find nothing in the statute that declares the time within which the collector must reliquidate upon a decision of the United States Customs Court or a decision of a higher court. The law creating the Court of Customs and Patent Appeals (subsection 29, of section 28, Tariff Act of 1909), fixes the time within which an appeal to that court must be perfected. That time is fixed at 60 days after the entry of such decree or judgment. Until that period has run a case is still with the United States Customs Court. Upon the appeal being perfected this court loses jurisdiction. Upon the expiration of 60 days within which appeal may be taken this court loses jurisdiction further to act. Certainly no liquidation of the collector could be binding if made before the expiration of the statutory time given within which to appeal from a decision of this court. The logic of the situation would seem to support the conclusion that the collector may have a reasonable time after the expiration of the time for appeal within which to reliquidate cases that are remanded to him for reliquidation. It is our opinion that the importer is not entitled to recover in this case.

Judgment for defendant. It is so ordered.